**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| OLIVER JAMES STRAHL, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER SAFETY TECHNOLOGY, LLC D/B/A INTOXALOCK,<br><br>Defendant. | Case No: 4:26-cv-00130-SMR-HCA |
| BRADLEY PRAZNIK, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER SAFETY TECHNOLOGY, LLC D/B/A INTOXALOCK,<br><br>Defendant. | Case No. 4:26-cv-00131-RGE-SBJ |
| DERRICK CURRY, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER SAFETY TECHNOLOGY, LLC D/B/A INTOXALOCK,<br><br>Defendant. | Case No. 4:26-cv-00134-SMR-HCA |
| JAMES PRATT, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER SAFETY TECHNOLOGY, LLC D/B/A INTOXALOCK, | Case No. 4:26-cv-00145-RGE-WPK |

| | |
|---|---|
| Defendant. | |
| JERMAINE PEALS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER SAFETY TECHNOLOGY, LLC D/B/A INTOXALOCK,<br><br>Defendant. | Case No. 4:26-cv-00146-RGE-WPK |

**PLAINTIFFS' MOTION FOR CONSOLIDATION AND APPOINTMENT OF INTERIM CLASS COUNSEL AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ iii

TABLE OF AUTHORITIES ........................................................................................................ iv

I.    INTRODUCTION ................................................................................................................ 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................................... 2

III.    THE COURT SHOULD CONSOLIDATE THE ACTIONS .............................................. 2

    1.    The Related Actions Share Common Questions of Law and Fact. ................................ 2

    2.    Consolidation Promotes Judicial Economy and Avoids Unnecessary Costs and Delay. ............................................................................................................................ 3

IV.    THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL ..................................... 4

    1.    Legal Standard ............................................................................................................. 4

    2.    The Court Should Appoint Mr. Klinger, Mr. Bean, and Mr. Almeida as Interim Lead Class  Counsel Under Rule 23(g). ................................................................... 6

      i.    Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims. .................................................................. 6

      ii.    *Proposed Interim Class Counsel Have Significant Relevant Experience.* ...................... 7

      iii.    Proposed Interim Class Counsel have Committed, and will Continue to Commit, the Resources Necessary to Represent the Class. ............................................................... 10

      iv.    Other Factors Support Designating Proposed Interim Class Counsel. .......................... 10

V.    CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cappello v. Franciscan All., Inc.*,
    No. 3:16-CV-290-TLS-MGG, 2017 WL 781609 (N.D. Ind. Feb. 28, 2017)...................................6

*Duqum v. Scottrade, Inc.*,
    No. 4:15-cv-1537-SPM, 2016 WL 1700427 (E.D. Mo. Apr. 28, 2016) .........................................5

*Ekin v. Amazon Servs., LLC*,
    No. C14-0244-JCC, 2014 WL 12028588 (W.D. Wash. May 23, 2014)..........................................5

*Feathers v. On Q Financial LLC*,
    No. 2:24-cv-00811(D. Ariz.)........................................................................................................7

*Gamboa v. Ford Motor Co.*,
    381 F. Supp. 3d 853 (E.D. Mich. 2019).......................................................................................5

*In re Aluminum Phosphide Antitrust Litig.*,
    No. 93-2452, 1994 WL 481847 (D. Kan. May 17, 1994)..............................................................10

*In re Life Partners Holdings, Inc.*, No. DR-11-CV- 43-AM,
    2012 WL 12875942 (W.D. Tex. May 9, 2012)...............................................................................4

*In re Wendy's Co. S'holder Derivative Litig.*,
    No. 1:16-cv-1153, 2018 WL 6605394 (S.D. Ohio Dec. 17, 2018)..............................................11

*Keil v. Bearden*,
    2021 WL 7708479 (W.D. Mo. Nov. 17, 2021)................................................................................2

*Kubiak v. Barbas*,
    No. 3:11-cv-141, 2011 WL 2443715 (S.D. Ohio June 14, 2011)................................................11

*League of United Latin American Citizens v. Abbott*,
    No. EP-21- CV-00259-DCG, 2021 WL 5417402 (W.D. Tex. Nov. 21, 2021) ..............................3

*Leeb v. Charter Comm'ns, Inc.*, No. 4:17CV2780 RLW, 2019 WL 1372587 (E.D. Mo. Apr. 3, 2019)
    .......................................................................................................................................................5

*McGinley v. Luv n' care, Ltd.*,
    2017 WL 11446205 (W.D. Mo. May 30, 2017) .............................................................................2

*Ocean Ships, Inc. v. Stiles*,
  No. 00 Civ. 5469, 2003 WL 22741457 (S.D.N. Y. 2003) ................................................. 4

*Roe v. Arch Coal, Inc.*,
  No. 4:15-cv-910 (CEJ), 2015 WL 6702288 (E.D. Mo. Nov. 2, 2015) ....................................... 5, 6

*Syzmczak v. Nissan N. Am., Inc.*,
  Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306 (S.D.N.Y. May 15, 2012).............. 5

**Rules**

Fed. R. Civ. P. 23(b)(2)........................................................................................... 10

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................................... 6

Fed. R. Civ. P. 23(g)(1)(A)-(B) ................................................................................. 6

Fed. R. Civ. P. 23(g)(1)(B) ........................................................................................ 6

Fed. R. Civ. P. 23(g)(1)(C) ........................................................................................ 11

Fed. R. Civ. P. 23(g)(2)(A) ....................................................................................... 6

Fed. R. Civ. P. 23(g)(3)........................................................................................ 5, 7, 13

Fed. R. Civ. P. 23(g), 42(a)..................................................................................... 2, 6, 7

Fed. R. Civ. P. 42(a) ........................................................................................... v, 3

**Other Authorities**

7B Charles Alan Wright et al., FEDERAL PRACTICE. & PROCEDURE § 1802.3 (3d ed. 2005) ... 6

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 42(a), Plaintiffs Oliver James Strahl and Bradley Praznik (collectively, "Plaintiffs") respectfully move for an order consolidating their related proposed class actions (the "Related Actions") currently pending in the Southern District of Iowa: *Strahl v. Consumer Safety Technology, LLC d/b/a Intoxalock*, Case No. 4:26-cv-00130-SMR-HCA, *Praznik v. Consumer Safety Technology, LLC d/b/a Intoxalock*, Case No. 4:26-cv-00131-RGE-SBJ, *Curry v. Consumer Safety Technology, LLC d/b/a Intoxalock,* Case No: 4:26-cv-00134-SMR-HCA, *Pratt v. Consumer Safety Technology, LLC d/b/a Intoxalock*, Case No. 4:26-cv-00145-RGE-WPK, and *Peals v. Consumers Safety Technology, LLC d/b/a Intoxalock*, Case No. 4:26-cv-00146-RGE-WPK.

The Related Actions arise from the same alleged data incident (the "Data Incident") involving Defendant Consumer Safety Technology, LLC d/b/a Intoxalock ("Defendant"). Critically, each of the Related Actions have similar claims regarding the Data Incident and assert similar injuries for Plaintiffs and Class Members. The Related Actions are all the known cases filed in this District arising out of the Data Incident. Given the substantial similarities between the Related Actions, consolidating the above-captioned cases at this early stage is in the best interest of the Parties, Class Members, and the Court. *See* Fed. R. Civ. P. 23(g), 42(a).

Moreover, Plaintiffs request that the Court appoint John Nelson of Milberg, PLLC,  Linda P. Nussbaum, Nussbaum Law Group, P.C., and J. Barton Goplerud, Shindler Anderson Goplerud & Weese, P.C. to serve as Interim Co-Lead Counsel pursuant to Fed. R. Civ. P. 23(g) to guide this litigation for the Plaintiffs and putative Class Members. Mr. Klinger, Ms. Nussbaum and Mr. Goplerud are recognized leaders in data breach litigation and have litigated dozens of data breach and privacy class actions. Moreover, their firms have the resources necessary to prosecute and take this complex data breach class action to trial. Proposed Interim Class Counsel have been intimately involved in investigating, prosecuting, and coordinating this litigation, including the preparation and filing of this

1

Motion. Appointment of Interim Class Counsel at this early juncture will facilitate coordinated prosecution of the Related Actions and the possibility of early potential resolution, thereby conserving judicial resources. Thus, their appointment will best serve the Class.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant is a provider of ignition interlock devices ("IIDs") or car breathalyzers, helping individuals with DUI/OWI convictions resume driving safely. Defendant's devices measure breath alcohol concentration ("BrAC") and prevent cars from starting if a driver has been drinking, meeting state requirements in 46 states with over 100,000 users.

On March 14, 2026, Defendant experienced an Incident. As a result of the Incident, installations, calibrations, account access, and other court-ordered services of Defendant were disrupted. This resulted in many customers, including Plaintiff and Class Members, from being able to provide a negative alcohol breath sample in order start their vehicles.

On March 25, 2026, Plaintiff Strahl filed the first class action complaint concerning the Data Incident, bringing about claims for negligence, breach of contract, and unjust enrichment. Thereafter, four class action complaints were filed arising from the same Incident.

## III.     THE COURT SHOULD CONSOLIDATE THE ACTIONS

Fed. R. Civ. P. 42(a) allows for case consolidation "[w]hen actions involving a common question of law or fact are pending before the court" and "to avoid unnecessary costs or delay." *See McGinley v. Luv n' care, Ltd.*, 2017 WL 11446205, at *1 (W.D. Mo. May 30, 2017); *Keil v. Bearden*, 2021 WL 7708479, at *1 (W.D. Mo. Nov. 17, 2021) ("Consolidation is usually favored when two cases involve 'common parties, overlapping legal issues, and related factual scenarios.'") (citations omitted).

### 1.     The Related Actions Share Common Questions of Law and Fact.

Consolidation of the Related Actions is proper because, for the purposes of consolidation, the Related Actions indisputably share "common questions of law or fact" and consolidation will serve

judicial convenience and reduce cost and delay. All Related Actions arise from the same Data Breach, are all pled as class actions against Defendant, and involve substantially overlapping factual allegations and causes of action.

For purposes of consolidation, Plaintiffs contend that these common questions of fact and law in the Related Actions include, *inter alia*: (a) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Incident; (b) Whether Defendant's data security systems prior to and during the Incident complied with applicable data security laws and regulations; (c) Whether Defendant's conduct was negligent; (d) Whether Defendant was unjustly enriched; and (e) The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

For purposes of consolidation, Plaintiffs contend that these common questions of fact and law predominate and favor consolidation. Courts consistently find that data incident class actions are appropriate for consolidation. *See, e.g.*, *Johnson et al. v. Cornerstone National Insurance Company,* No. 22-cv- 04135 (W.D. Mo. Mar 6, 2023), ECF No. 29 (ordering consolidation of two actions arising from a data breach); *Guy v. Convergent Outsourcing, Inc.*, No. 2:22-cv-01558 (W.D. Wash. Dec. 13, 2022), ECF No. 16 (ordering consolidation of four actions arising from a data breach); *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-3424 (N.D. Tex. Mar. 19, 2021), ECF No. 37 (ordering consolidation of three actions stemming from the same data breach).

2.      **Consolidation Promotes Judicial Economy and Avoids Unnecessary Costs and Delay.**

In determining whether to consolidate cases, courts typically evaluate the burden on parties, witnesses, and judicial resources and the risk of inconsistent adjudications of common factual and legal issues were the lawsuits to be tried separately. *See League of United Latin American Citizens v. Abbott*, No. EP-21- CV-00259-DCG, 2021 WL 5417402, at *2 (W.D. Tex. Nov. 21, 2021) (consolidating cases upon finding: "that the cases share common defendants; that the cases share

common questions of law and fact; that consolidation will conserve judicial resources and best serve the interests of all parties and witnesses; and that the cases are at similar stages of litigation."). Here, the Related Actions are in the initial stages of litigation, and consolidation will reduce delay, confusion, and duplication of discovery, motion practice, and depositions. Plaintiffs' counsel anticipates that the Related Actions will involve substantially the same discovery. Thus, consolidating the Related Actions will eliminate duplicative judicial work, streamline motion practice, prevent duplicative written discovery and depositions, and avoid conflicting outcomes. *See In re CaptureRx Data Breach Litig.*, No. 5:21-cv-00523-OLG, Doc. No. 13, at 1 (W.D. Tex. July 8, 2021) (consolidating related actions in data breach class action "to ensure consistent and efficient adjudications"); *Ocean Ships, Inc. v. Stiles*, No. 00 Civ. 5469, 2003 WL 22741457, at *3 (S.D.N.Y. 2003) ("Consolidating the two cases would also promote judicial efficiency by reducing discovery costs.").

To ensure continued judicial efficiency, Plaintiffs in each of the Related Actions also jointly and respectfully request that the Court order that any future actions that are filed, removed, or transferred to this Court and are based on the same or similar facts and circumstances be consolidated in the proposed master action: *In re Intoxalock Data Incident Litigation*, Case No. 4:26-cv-00130-SMR-HCA. *See, e.g.*, *In re Life Partners Holdings, Inc.*, No. DR-11-CV-43-AM, 2012 WL 12875942, at *1 (W.D. Tex. May 9, 2012) (consolidating new case following its order that "future cases 'arising out of the same or substantially the same transactions or events as the above captioned cases' shall be united into the consolidated case.").

## IV.   THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL

### 1.  Legal Standard

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of interim lead counsel "to act on behalf of putative class members before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Early appointment of interim class counsel is warranted when there are

competing "copycat" filings or the risk of such filings. Multiple identical or similar actions prevent efficient prosecution of claims and cause disjointed legal strategy and prejudice to both defendants, plaintiffs, and putative class members. *See Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 867 (E.D. Mich. 2019) ("Designation of interim counsel is particularly appropriate when a number of lawyers have filed related 'copycat' actions."); *Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2014 WL 12028588, at *3 (W.D. Wash. May 23, 2014) ("designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.") (quoting MANUAL OF COMPLEX LITIG. § 21.11 (4th ed. 2004)). Rule 23(g) contemplates early appointment of class counsel, even where there are no competing applications. *See Duqum v. Scottrade, Inc.*, No. 4:15-cv-1537-SPM, 2016 WL 1700427, at *1 (E.D. Mo. Apr. 28, 2016). Indeed, the Advisory Committee Notes to Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." Designating class counsel now ensures the protection of the interests of the Class in making and responding to motions, conducting discovery, and negotiating possible settlements. *See Leeb v. Charter Comm'ns, Inc.*, No. 4:17CV2780 RLW, 2019 WL 1372587, at *1 (E.D. Mo. Apr. 3, 2019); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012) (citing MANUAL FOR COMPLEX LITIG. § 21.11 (4th ed. 2004)).

Determining the appointment of interim class counsel requires the court to consider counsel's: (1) work in identifying and investigating potential claims; (2) experience in handling class action and complex litigation and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) available resources. *Roe v. Arch Coal, Inc.*, No. 4:15-cv-910 (CEJ), 2015 WL 6702288, at *2 (E.D. Mo. Nov. 2, 2015) (citing Fed. R. Civ. P. 23(g)(1)(A)). The court may also consider "any other

matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* (citing Fed. R. Civ. P. 23(g)(1)(B)). The purpose of this Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." MANUAL FOR COMPLEX LITIG. § 10.22 (4th ed. 2004). The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221; *see also Cappello v. Franciscan All., Inc.*, No. 3:16-CV-290-TLS-MGG, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017). Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the relative strengths of counsel. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); 7B Charles Alan Wright et al., FEDERAL PRACTICE. & PROCEDURE § 1802.3 (3d ed. 2005).

2.      **The Court Should Appoint Mr. Klinger, Mr. Bean, and Mr. Almeida as Interim Lead Class  Counsel Under Rule 23(g)**.

As Plaintiffs demonstrate below, Proposed Interim Class Counsel satisfy all requirements for appointment by the Court.

### i. *Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims.*

Proposed Interim Class Counsel have been diligent in investigating and advancing this litigation. Counsels' investigations prior to filing the Related Actions included, without limitation, analyzing the circumstances surrounding the Data Incident, interviewing individuals injured by the Data Incident, researching potential legal claims, drafting initial pleadings and statutory notices, and organizing Plaintiffs and counsel to self-consolidate the actions and move the litigation forward. Indeed, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could be caused by a leadership dispute to address the merits of the case as expeditiously as possible. Proposed Interim Class Counsel's efforts at self-organization were successful, as evidenced by this Motion. Going forward, and if appointed, Proposed Interim Class Counsel will establish a standardized

6

protocol for managing and reporting time and expenses incurred. Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3).

### ii.   Proposed Interim Class Counsel Have Significant Relevant Experience.

Proposed Interim Class Counsel are well-qualified to lead this case because they have a track record of successfully litigating and resolving consumer class actions, particularly data breach class actions. The qualifications and experience of Proposed Interim Class counsel are set forth below.

**John J. Nelson of Milberg, PLLC**

Since Milberg's founding in 1965 it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements. Milberg has been instrumental in obtaining precedent-setting decisions at every level, including at the United States Supreme Court.[2] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. Milberg is comprised of more than one hundred-twenty attorneys who work from offices across the United States and in Portugal, the United Kingdom, the Netherlands, and Germany. Milberg attorneys come from diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent—from the standpoint of age, gender, experience, and geographic location.

As a member of Milberg's data privacy team, Mr. Nelson has been appointed by state and federal courts as class counsel in data breach class actions, including: *In re Community Clinic of Maui Data Breach Litigation,* No. 1:24-cv-00431 (D. HI) (appointed co-lead counsel); *In Re: SAG-AFTRA Health Plan Data Security Litigation*, No. 2:24-cv-10503 (C.D. Cal.) (appointed co-lead counsel); *Feathers v. On Q Financial LLC*, 2:24-cv-00811 (D. Ariz.) (appointed co-lead counsel); *Anderson v. Oak View Group, LLC*, No. 2:24- cv-00719 (C.D. Cal.) (appointed co-lead counsel); *Puller-Soto v.*

*UNITE HERE*, No. 1:24-cv-01565 (S.D.N.Y.) (appointed co-lead counsel); *Kohn et al. v. Loren D. Stark Company, Inc.*, Case No. 4:23-cv-03035 (S.D. Tex.) (appointed co-lead counsel); *In Re: Houser Data Breach Litigation*, No. 8:24-cv-00468 (C.D. Cal.) (appointed co-lead counsel); *In Re: Ethos Technologies Inc. Data Breach Litigation*, No. 3:22-cv-09203-SK (N.D. Cal.) (appointed co-lead counsel). Mr. Nelson has also been appointed to the Plaintiffs' Steering Committee in the recent 60-million-person data breach litigation captioned *In Re: Powerschool Holdings, Inc., and Powerschool Group, LLC Customer Data Security Breach Litigation*, Case No.: 25-md-3149-BEN-MSB. He was also appointed to the Plaintiffs' Steering Committee in *Cheng et al v. Toyota Motor Corporation, et al* a nationwide class action involving defective fuel pumps which resulted in a 330-million-dollar nationwide settlement. No. 1:20-CV-00629 (E.D.N.Y.) (final approval granted December 21, 2022). Mr. Nelson was also appointed to the Executive Committee in *In re Seresto Flea and Tick Collar Marketing, Sales Practices and Product Liability Litigation*, MDL No. 3009, Master Docket Case No. 1:21-cv-04447 (N.D. Ill.).

A copy of Mr. Nelson's firm resume is attached hereto as **Exhibit A**

**Lind P. Nussbaum of Nussbaum Law Group, P.C. ("NLG")**

Ms. Nussbaum has been a leader of the plaintiffs' class action bar for over 35 years. After practicing as a senior partner in two preeminent plaintiffs' firms, Ms. Nussbaum formed Nussbaum Law Group, P.C. in April 2015, as a woman-owned and led firm prosecuting precedent-setting class litigation with the singular focus of providing the highest level of service and best results.

Ms. Nussbaum has served as Lead or Co-Lead counsel in over 25 class actions, including significant data breach cases. *In In re Morgan Stanley Data Security Litigation*, No. 1:20-cv-05914-AT (S.D.N.Y.), Ms. Nussbaum, as one of two lead counsel, led the effort to secure a $60 million non-reversionary cash fund in addition to benefits valued at over $8 million for 15 million class members. At the final approval hearing, S.D.N.Y. Judge Paul A. Engelmayer remarked that Plaintiffs were

represented by "first-rate lawyers." Ms. Nussbaum was also appointed a lead counsel in *In re Centrastate Healthcare Data-Security Incident Litig.*, MON-L-000504-23 (Sup. Ct. N.J.), a case involving a ransomware attack on a private not-for-profit health organization that recently settled. In addition, Ms. Nussbaum was appointed Co-Lead Counsel for the Settlement Class in *Nanette Katz, et al. v. Einstein Healthcare Network*, No. 21040204, Philadelphia Court of Common Pleas, First Judicial District of Pennsylvania.

Currently, Ms. Nussbaum is one of two LabCorp Track Co-Lead Counsel in the AMCA multidistrict litigation for a proposed class of 10 million LabCorp patients. *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, Civil Action No. 19-md-02904 (D.N.J.). She has played a significant role in discovery in that matter, taking key depositions and working closely with experts. Most recently, Ms. Nussbaum has also been placed in charge of over 4 million Northwell Health plaintiffs in *In re Perry Johnson & Assoc. Med. Transcription Data Security Breach Litig.*, 24-md-03096 (E.D.N.Y).

In addition to her data breach experience, Ms. Nussbaum is also currently serving as Co-Lead Class Counsel for a certified Rule 23(b)(2) putative class of merchants who accept credit cards in a long-running antitrust litigation challenging supra-competitive merchant fees brought against Visa, Mastercard and the major national banks in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 1:05-md-01720-MKB-VMS (E.D.N.Y.).  Ms. Nussbaum also currently serves as one of three Interim Co-Leads in *In re Fragrance Direct Purchaser Antitrust Litigation*, No. 23-2174-WJM (D.N.J.).

Ms. Nussbaum has also been a trial team member in several class actions. Although most commenced trial and then settled at some point before verdict, she prosecuted as Co-Lead Trial Counsel a landmark RICO case concerning the prescription drug Neurontin. *In re Neurontin Marketing and Sales Practices Litig.*, No. 04cv10981 (D. Mass.). After a five-week jury trial in

Boston, the jury returned a verdict for Kaiser for over $47 million, which was then statutorily trebled to over $142 million. Following the trial, Judge Patti B. Saris commented that:"[This was] a fabulous trial[.] [I]t's the kind of thing that you become a judge to sit on."

Ms. Nussbaum credits her longevity and success in fulfilling leadership roles in class actions for over three decades (both as lead counsel and PSC member) to her ability to work collegially with others. If appointed, Ms. Nussbaum will treat this case with the highest priority. She is very familiar with the preliminary issues that will arise early in the case, as well as discovery and expert issues as the case proceeds. She looks forward to working with others as part of a court appointed leadership structure. For more information about Ms. Nussbaum and NLG, visit the firm's website at www.nussbaumlawgroup.com, and see her firm resume attached hereto as **Exhibit B**.

**J. Barton Goplerud, Shindler Anderson Goplerud & Weese, P.C.**

A copy of Mr. Goplerud's firm resume is attached hereto as **Exhibit C**.

### *iii. Proposed Interim Class Counsel have Committed, and will Continue to Commit, the Resources Necessary to Represent the Class.*

A court appointing interim lead counsel should also consider the resources that counsel will commit to representing the putative classes. Fed. R. Civ. P. 23(g)(1)(C). Proposed Interim Co-Lead Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. Each firm understands the time, energy, and skill necessary to lead this litigation and all will commit the resources required to ensure the effective and efficient representation of the Class Members. And, as their firm resumes and counsels' experience indicate, Proposed Interim Class Counsel have the resources and willingness to see this litigation through to its conclusion, including trial.

### *iv. Other Factors Support Designating Proposed Interim Class Counsel.*

The proposed leadership structure has the support of all Plaintiffs in the Related Actions. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at **5, 7 (D. Kan. May

17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel."); MANUAL FOR COMPLEX LITIG. §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"). A leadership slate should also "responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and background." Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass- Tort MDLs* 28 (2d ed. 2018) ("Duke Guidelines"), available at https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-201For-Posting-pdf. The proposed leadership team brings a diverse set of experiences and skills, and their success in self-organizing and securing each other's support demonstrates their suitability for leadership roles. The proposed leadership team will also work well as a team, with opposing counsel, and with the Court. *See* MANUAL FOR COMPLEX LITIG. § 10.21 (explaining that leadership should place a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the court, all of which are critical to successful management of the litigation). Indeed, courts often consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." *See* Duke Guidelines. Here, the proposed leadership have developed working relationships, have complimentary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*.

Further, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. Proposed Interim Class

Counsel understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party funding to do so. While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. To this end, Proposed Interim Class Counsel have already discussed how best to organize to effectively use their diverse skills and unique experiences for the efficient prosecution and management of this litigation, while avoiding unnecessary and duplicative billing.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

1) Consolidating the Related Actions under the master case caption *In re: Intoxalock Data Incident Health Litigation*, Case No. 4:26-cv-00130-SMR-HCA;

2) Consolidating any future-filed, transferred, or removed case that arises out of the same subject matter as the Related Actions;

3) Appointing Mr. Nelson, Ms. Nussbaum, and Mr. Goplerud as Interim Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3);

4) Setting a deadline of thirty (30) days following the entry of an order appointing Interim Co-Lead Class Counsel for the filing of a Consolidated Class Action Complaint; and

5) Striking all pending deadlines in each of the Related Actions and staying each of the Related Actions, including any Defendant's responsive pleading deadlines.

*[SIGNATURE BLOCKS ON FOLLOWING PAGE]*

DATED: May 11, 2026                 Respectfully submitted,

/s/ *J. Barton Goplerud*
J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
**SHINDLER ANDERSON GOPLERUD & WEESE P.C.**
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
Email: goplerud@sagwlaw.com
Email: marty@sagwlaw.com

John J. Nelson (*pro hac vice* forthcoming)
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Tel.: (858) 209-6941
Email: jnelson@milberg.com

Linda P. Nussbaum (*pro hac vice* forthcoming)
**NUSSBAUM LAW GROUP, P.C.**
1225 Franklin Avenue, Suite 325
Garden City, NY 11530
Tel: (917) 438-9189 Email:
Lnussbaum@nussbaumpc.com

Brent S. Schafer
**SCHAFER LAW FIRM, P.A.**
8646 Eagle Creek Circle, Suite 212
Savage, MN 55378
Tel: (651) 209-1919
Email: bschafer@schaferlawfirm.com

Daniel O. Herrera (*pro hac vice* forthcoming)
Nickolas J. Hagman (*pro hac vice* forthcoming)
Alex Lee (*pro hac vice* forthcoming)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nhagman@caffertyclobes.com
alee@caffertyclobes.com

Lori Bullock AT0012240

13

**BULLOCK LAW PLLC**
309 E 5th Street, Suite 202B
Des Moines, Iowa 50309
Telephone: (515) 423-0551
bullock@bullocklawpllc.com
Raina C. Borrelli (*pro hac vice* forthcoming)
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
raina@straussborrelli.com

Daniel Srourian, Esq. (*pro hac vice* forthcoming)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 11, 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was thereby served on all counsel of record.

/s/ J. Barton Goplerud
draft